```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
Roz Saedi, individually and on behalf    :
of all others similarly situated,        :
                                         :    24cv3893 (DLC)
                          Plaintiff,     :
                                         :    OPINION AND
                 -v-                     :      ORDER
                                         :
Coterie Baby, Inc.,                      :
                          Defendant.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:

Annie M. Friedman
Avorn LLC
88 Lefferts Place, Suite 3a
Brooklyn, NY 11238

Eric S Dwoskin
Dwoskin Wasdin LLP
433 Plaza Real, Suite 275
Boca Raton, FL 33432

For defendant:

James Moloney, Allyson E. Cunningham
Lathrop GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108


DENISE COTE, District Judge:

   Plaintiff Roz Saedi, a resident of California, brings this

action against Coterie Baby, Inc. ("Coterie"), which is

headquartered in New York and incorporated in Delaware.  This

Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act.  28 U.S.C. § 1332(d)(2).

Saedi alleges that Coterie sold diapers containing per- and polyfluoroalkyl substances ("PFAS") despite advertising that its diapers are free from PFAS and other harmful chemicals.  She alleges that she paid a premium for Coterie's diapers because she believed that they were PFAS-free.  Saedi seeks damages and injunctive and declaratory relief for herself and for the proposed class.

Coterie moves to dismiss the first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that Saedi lacks standing under Article III and that she has failed to state a claim upon which relief can be granted.  For the following reasons, Coterie's Rule 12(b)(1) motion is granted.

## Background

The following facts are taken from the FAC and documents that the FAC incorporates by reference.  See Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024).  For purposes of deciding this motion, the FAC's factual allegations are accepted as true, and all reasonable inferences are drawn in Saedi's favor.

I.  Coterie's advertising and PFAS

Coterie manufactures, markets, and sells diapers to consumers in the United States. In doing so, the company makes various representations regarding the lack of chemical contamination in its products. Its packaging states that the diapers are "free from harmful chemicals," and its social media marketing represents that "[i]f any chemical may be considered toxic, or is associated with health risks, you won't find it in our diapers." More specifically, Coterie's online marketing states that its diapers are "Free From PFAS," or are "PFAS-Free." Similarly, the company's website represents that its diapers are "free of [or] below detectable . . . levels . . . for nearly 200 chemicals that may be considered toxic or harmful for use, including . . . Perfluorinated compounds."

PFAS are a group of over 10,000 synthetic chemicals. They are often referred to as "forever chemicals" because they do not naturally break down in the environment, or "biodegrade." Humans can be exposed to PFAS through ingestion, inhalation, and skin absorption. Exposure to PFAS has been linked to health consequences, including cancer, thyroid disorders, and harm to reproductive and immune systems. Scientists believe that "any" level of PFAS exposure may harm developing babies in particular by "meddling with gene regulators and hormones."

Saedi alleges that because PFAS do not biodegrade and have been used in industry for decades -- including in the textile sector -- there is "widespread PFAS contamination worldwide," from "the far reaches of the arctic to urban rainwater." As a result, almost all human beings have PFAS in their blood. Moreover, citing a 2022 study concerning the prevalence of PFAS in dust, the FAC asserts that due to the "ubiquitous presence of PFAS in the air and on surfaces, the chemicals [are] widely present in the dust collecting in homes and commercial buildings". See Tina Savvaides et al., Prevalence and Implications of Per- and Polyfluoroalkyl Substances (PFAS) in Settled Dust, Current Environmental Health Reports, January 2, 2022, at 330 (the "Prevalence Study"). In light of "the ubiquity of PFAS in the environment," the FAC alleges, "it is essentially impossible to manufacture, ship, and sell a diaper that is entirely free of PFAS." And the FAC asserts that only by taking "extraordinary measures" could one produce, ship, and sell a consumer product that is "actually PFAS-free."

II.  Independent test of a Coterie diaper and Saedi's purchase

In February 2024, an independent, third-party laboratory tested a Coterie diaper using "the industry standard" methods for identifying PFAS compounds in consumer products. The test

identified "multiple PFAS chemicals" in the diaper, "including the perfluorinated compound Perfluoropropionic Acid."

Saedi pays for a subscription under which Coterie delivers diapers to her every four weeks for $90.00 per delivery. In March 2024, she received a package of diapers from Coterie.[1] On information and belief, Saedi alleges that all Coterie diapers -- including the tested diaper and the diapers purchased by Saedi and by unnamed class members -- are manufactured similarly and in the same facilities.

Finally, the FAC alleges that Saedi was exposed to Coterie's marketing before deciding to purchase Coterie's diaper subscription service. In choosing to purchase Coterie's diapers, Saedi "relied on [Coterie's] representations that [its] diapers were entirely free of chemicals, including PFAS." Saedi alleges that she was willing to pay the price she paid for Coterie diapers because she believed Coterie's diapers were free from harmful chemicals, including PFAS.

Saedi filed this class action complaint on May 20, 2024. After Coterie filed a motion to dismiss, Saedi was given an opportunity to amend her complaint and was warned that it was unlikely that she would have another opportunity to amend.

---

[1] The FAC does not detail when Saedi signed up for her Coterie subscription, and it does not allege that she received any additional diaper shipments, either before or after March 2024.

Saedi filed the FAC on July 12.  On July 26, Coterie renewed its motion to dismiss.  The motion became fully submitted on August 16.

## Discussion

The FAC asserts six counts: (1) breach of express warranty; (2) unjust enrichment; (3) violations of several state consumer-protection statutes; (4) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"); (5) violations of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"); and (6) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL").  Saedi seeks certification pursuant to Rules 23(b)(2) and (b)(3), Fed. R. Civ. P., of a nationwide class of all persons who purchased Coterie diapers (as to Counts 1 and 2) and certain state-based subclasses of such consumers (as to Counts 3, 4, 5, and 6).[2]

---

[2] Specifically, as to Counts 1 and 2, Saedi seeks certification of a nationwide class of all persons residing in the United States who purchased Coterie diapers.  For Count 3, she seeks certification of a "multistate consumer protection subclass," including all persons residing in 13 states and the District of Columbia who purchased Coterie diapers.  Finally, as to Counts 4, 5, and 6, she seeks certification of a California subclass of all persons residing in California who purchased the product.

6

Coterie moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(1).  It contends that, as to all six counts, Saedi lacks Article III standing.

Article III standing is "always an antecedent question, such that a court cannot resolve contested questions of law when its jurisdiction is in doubt."  Do No Harm v. Pfizer Inc., 96 F.4th 106, 120-121 (2d Cir. 2024) (citation omitted).  Because Saedi has not alleged sufficient facts to support standing, Saedi's claims are dismissed without prejudice.  See Clementine Company, LLC v. Adams, 74 F.4th 77, 90 n.4 (2d Cir. 2023) (dismissals for lack of Article III standing must be without prejudice).

To have standing, a plaintiff must "establish (1) an injury in fact, defined as an invasion of a legally protected interest that is concrete, particularized, and actual or imminent; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision."  Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York, 98 F.4th 386, 391 (2d Cir. 2024) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  In a potential class action, a named plaintiff "must allege and show that they personally have been injured, not that injury has been suffered by other,

7

unidentified members of the class to which they belong and which they purport to represent." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005) (citation omitted).

It is well established that "monetary harms" "readily qualify as concrete injuries under Article III." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021); see also Soule v. Connecticut Ass'n of Sch., Inc., 90 F.4th 34, 45 (2d Cir. 2023). Accordingly, where a consumer overpays for a product, she suffers "a financial loss constituting a particularized and concrete injury in fact." John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017).

The plaintiff, however, bears the burden of establishing standing, and "each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation." Do No Harm, 96 F.4th at 114 (citation omitted). Where, as here, a defendant's Rule 12(b)(1) motion is based on a "facial" challenge to the complaint (i.e., based solely on the allegations in the complaint and any exhibits attached to it), a court must "determine whether, accepting as true all material factual allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff[], the complaint alleges

8

facts that affirmatively and plausibly suggest that the plaintiff[] [has] standing to sue." New York v. Yellen, 15 F.4th 569, 575 (2d Cir. 2021) (citation omitted).

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss" a court presumes "that general allegations embrace those specific facts that are necessary to support the claim." New England Carpenters Guaranteed Annuity and Pension Funds v. DeCarlo, 80 F.4th 158, 180 (2d Cir. 2023) (citation omitted). Nevertheless, in determining whether a plaintiff has standing to sue, a court "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'" Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Rather, a court "refer[s] to a complaint's factual context to discern whether to accept a complaint's conclusory statements." Id. (citation omitted).

The FAC alleges that Saedi was injured because she paid more for Coterie's diapers than she would have had she known that Coterie is "not taking the extraordinary measures necessary to sell an actually PFAS-free diaper." The parties do not "dispute[] that overpaying for a product results in a financial

9

loss constituting a particularized and concrete injury in fact." John, 858 F.3d at 736.  Still, Saedi fails to plead enough facts to "affirmatively and plausibly suggest" that she did indeed suffer a price-premium injury.  Yellen, 15 F.4th at 575 (citation omitted).  As a result, her complaint must be dismissed for lack of standing.[3]

To properly plead a price-premium injury, Saedi must plausibly allege that she purchased at least one Coterie diaper that was misbranded because -- contrary to Coterie's advertisements -- it contained PFAS.  Saedi does not take the simplest path to achieving this result, which would be to allege that she tested diapers that were among the $90 worth of diapers she received in March 2024 and that one of those diapers contained PFAS.  Rather, she asks this Court to infer that the diapers she received in March 2024 contained PFAS based on her allegations that PFAS are "ubiquitous".  She adds that the test of a single Coterie diaper done in February 2024 confirmed that Coterie diapers are no exception.

---

[3] Coterie further contends that Saedi's injury is not traceable to Coterie's conduct and that Saedi lacks standing to assert Counts I, II, and III on behalf of a putative class pursuant to state laws under which her own claims do not arise.  Because Saedi's complaint is dismissed without prejudice for failure to plausibly allege an injury in fact, the Court does not address these other Rule 12(b)(1) arguments.

The Second Circuit's leading case on pleading an injury in fact based on a likelihood of past injury is John v. Whole Foods Marketing Group, Inc., 858 F.3d 732 (2d Cir. 2017).  There, the Second Circuit held that a plaintiff had standing to bring false advertising claims against Whole Foods.  Id. at 736.  The plaintiff alleged that he had made "monthly purchases" of Whole Foods pre-packaged products and that he was overcharged for those purchases.  Id. at 735.  He did not, however, identify a specific purchase for which he was overcharged.  Id.  Instead, the "critical basis" for the plaintiff's alleged price-premium injury was a report from the New York City Department of Consumer Affairs ("DCA"), which found that Whole Foods had "systematically and routinely mislabeled and overpriced" pre-packaged foods.  Id. at 737.  The DCA investigation leading to the report took place in the same period in which the plaintiff alleged he made the purchases in question, and the investigation surveyed eight Whole Foods stores operating in New York City, two of which the plaintiff patronized.  Id. at 735.  The Second Circuit held that these allegations, in combination, made it "plausible that [the plaintiff] overpaid for at least one product."  Id. at 737.

In so concluding, the Second Circuit clarified that, under certain circumstances, "injury in fact [may] be adequately

11

pleaded with plausible allegations of a likelihood of past injury."  Id. at 738.  Specifically, John establishes that a plaintiff may allege an injury in fact by plausibly alleging a widespread problem caused by the defendant's conduct (Whole Foods's "systematic overcharging") and regular use of the defendant's product during the period of that widespread problem (John's "monthly" purchases of pre-packaged foods).  A plaintiff's injury will be all the more plausible where the plaintiff's allegations link the results of any independent testing to the products that the plaintiff purchased, for instance through geographic and temporal proximity.  Absent these kinds of allegations, a complaint may render it only "possible," not "plausible," that the plaintiff suffered an injury establishing standing to sue.  Id. at 738 (citing Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 147–48 (2d Cir. 2011)).

Here, the FAC fails to plausibly allege that Coterie systematically or routinely mislabeled its diapers.  For instance, it does not allege, based on independent testing of Coterie diapers, that some percentage are contaminated with PFAS.  See John, 858 F.3d at 736.  Instead, Saedi points to the allegations in the FAC that PFAS are ubiquitous in the environment, including in the dust accumulating in commercial

12

buildings. As a result, she argues that it is "essentially impossible to manufacture, ship and sell a diaper that is entirely PFAS-free," and that Coterie Diapers are "almost certainly" contaminated with PFAS.

A court, however, need not credit "naked assertion[s]" to the extent they are "devoid of further factual enhancement." Calcano, 36 F.4th at 75 (citation omitted). And a plaintiff may not "rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." Id. at 76 (citation omitted). "Furthermore, where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." Amidax, 671 F.3d at 146–47.

Saedi's basis for asserting that it is "essentially impossible" to produce a PFAS-free diaper and that Coterie's diapers are "almost certainly" contaminated rests entirely on the Prevalence Study. The Prevalence Study that Coterie cites does not, however, support the specific allegation that Saedi attributes to it -- i.e., that PFAS are "widely present" in the dust collecting in "commercial buildings."

The Prevalence Study is a literature review. It describes studies from around the globe that assess whether certain

13

household products release PFAS into particular indoor environments through their concentration in dust.  It highlights numerous household products as sources of PFAS emissions indoors -- including rugs and carpets, food packaging, cosmetics, building materials, furniture, textiles, insecticides, paper products, and electronics -- but notes that there is "insufficient data to suggest which of these are dominant contributors to settled dust PFAS."  Prevalence Study at 326.  Moreover, the literature it examined considered the accumulation of dust in indoor spaces such as "residential houses, daycares, and workplaces."  Id. at 324.  The identified "workplaces" were "offices" or "office spaces."  Id. at 324, 326, 327, 328, 330.  The Prevalence Study does not make any statement regarding the prevalence of PFAS in commercial buildings or in the dust in commercial buildings or manufacturing facilities.  Even with respect to those spaces that had been examined, the Prevalence Study notes that future work is needed to "better characterize PFAS indoor exposure via dust as a sentinel matrix."  Id. at 329.

Accordingly, this Court need not credit as true the FAC's factual allegation that PFAS are "widely present in the air and in the dust collecting in . . . commercial buildings," such as those that Coterie maintains.  That leaves Saedi with general

14

factual allegations that there is "widespread PFAS contamination worldwide," that PFAS are regularly used in the "textile sector," and that PFAS are now "ubiquitous in the environment . . . from the far reaches of the arctic to urban rainwater."  But those pleadings are insufficient to support Saedi's assertion that it is "essentially impossible" to produce a PFAS-free diaper or that Coterie's diapers are "almost certainly" contaminated with PFAS.  And they are insufficient to establish standing under John, which requires that a plaintiff offer allegations making it plausible, not just possible, that the defendant's product in particular is among those that suffer the defect of which the plaintiff complains.  858 F.3d at 736-37; see also, e.g., Hicks v. L'Oreal U.S.A., Inc., No. 22cv1989 (JPC), 2023 WL 6386847, at *2 (S.D.N.Y. Sept. 30, 2023).

    Finally, in opposing the motion to dismiss, Saedi readily admits that her single test of a Coterie diaper that she did not purchase cannot by itself support her standing to bring this action.  But even when combined with Saedi's general allegations that PFAS are ubiquitous, that single test is insufficient to infer "widespread" contamination in Coterie's diapers and, thus, "overcharging."[4]  John, 858 F.3d at 737.  Moreover, whatever

---

[4] Coterie additionally points out that the FAC's descriptions of the independent testing of the single diaper are themselves sparse and, given the alleged ubiquity of PFAS, inadequate to

15

amount of contamination in Coterie's product line the single tested diaper demonstrates, Saedi has failed to meaningfully link the tested diaper to the diapers she purchased, temporally or otherwise. While Saedi alleges on "information and belief" that the tested diaper "was manufactured similarly and in the same facilities as the Coterie Diapers purchased by Plaintiff," that conclusory allegation must also be disregarded. A litigant

> cannot merely plop "upon information and belief" in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.

Citizens United v. Schneiderman, 882 F.3d 374, 384-85 (2d Cir. 2018) (citation omitted)

In sum, the FAC's general allegations that PFAS are ubiquitous in dust collecting indoors do not make it "plausible" that Coterie's products are systematically and routinely contaminated with PFAS and therefore that Saedi overpaid for at least one diaper. A plaintiff like Saedi must do more than allege, without factual enhancement, that the defendant's

---

plead that the testing process itself was not contaminated. It is unnecessary to reach this argument given the other deficiencies in the pleading of standing.

products are routinely contaminated with PFAS.  See Calcano, 36 F.4th at 76.

## Conclusion

The July 26, 2024 motion to dismiss is granted for lack of standing.  The FAC is dismissed without prejudice.  The Clerk of Court shall close the case.

Dated:    New York, New York
          October 3, 2024

                                                    DENISE COTE
                                United States District Judge